

**FILED**

September 06, 2022 04:18 PM
ST-2019-CR-00178
**TAMARA CHARLES**
**CLERK OF THE COURT**

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| **PEOPLE OF THE VIRGIN ISLANDS,** | ) | **CASE NO. ST-2019-CR-00178** |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| **MARCIANO RIVERA,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Cite as 2022 VI Super 76U

### <u>MEMORANDUM OPINION</u>

**THIS MATTER** is before the Court on the Motion to Admit V.I.R.E. 404(b) Evidence, filed by the People of the Virgin Islands ("People").[1] The motion came on for hearing via ZOOM on August 16, 2022. Defendant Marciano Rivera ("Rivera" or "Defendant") appeared and was represented by Carl Williams, Esq. The People were represented by Assistant Attorney General Anna Scott. At the conclusion of the hearing, the Court took the matter under advisement. For the reasons set forth herein, the Court will deny the People's motion.

### BACKGROUND AND PROCEDURAL POSTURE

The People have charged Defendant Marciano Rivera with sexual assaults upon a thirteen (13)-year-old male identified as J.D., between June 27, 2019 and July 15, 2019. According to the Affidavit that supports the Information, officers from the Criminal Investigation Bureau of the Virgin Islands Police Department ("VIPD") made contact with J.D. on July 29, 2019, at the

---

[1] The motion was filed on July 20, 2022. The Defendant filed his opposition on August 11, 2022.

Schneider Regional Medical Center on St. Thomas, U.S. Virgin Islands, following alleged sexual assaults at the hands of an adult male, who allegedly forced J.D. to perform fellatio and submit to anal penetration.

Rivera is charged in a twelve (12)-count Information with two counts of Aggravated Rape in the First Degree, two counts of Possession of a Dangerous Weapon During the Commission of an Aggravated Rape, two counts of First Degree Assault, two counts of Possession of a Dangerous Weapon During the Commission of a First Degree Assault, two counts First Degree Unlawful Sexual Contact, and two counts of Child Abuse.

The People now move the Court, pursuant to Virgin Islands Rule of Evidence ("V.I.R.E.") 404(b), to admit testimony from unrelated sexual assault charges pending against Rivera in two other matters.[2] The People submitted the videotaped interviews of the victim and a witness from the instant case and victims and witnesses associated with the two other pending matters, all on DVD. V.I.R.E. 404(b) allows admission of certain, otherwise-prohibited evidence, if it is offered to prove preparation, plan, or identity, among other proper purposes. The People argue that statements taken for purposes of the unrelated pending sexual assault charges can and should be admitted because they display a pattern of behavior which, the People allege, Rivera follows in each instance, thereby demonstrating identity. Further, the People claim that the victims in the instant case and the two other pending matters share many similar characteristics that contribute to proof of Rivera's identity.

---

[2] The two other ongoing matters from which the People wish to introduce testimony are docketed as *People of the Virgin Islands v. Marciano Rivera*, Case No. ST-2019-CR-00165 and *People of the Virgin Islands v. Marciano Rivera*, Case No. ST-2019-CR-00278.

## FACTS

The Court reviewed the videotaped statements proffered by the People and gleaned the following pertinent information.

VIPD interviewed J.D., the victim in the instant matter, soon after he reported the assaults in July 2019. At the time of the interview, J.D. was a heavyset thirteen (13)-year-old African American or black Caribbean male. Throughout the interview, J.D. was well-spoken, poised, and seemingly very intelligent. J.D. told VIPD that a man, who J.D. knew as "Head Honcho", sexually assaulted him on five (5) occasions over the course of approximately two (2) weeks during the summer of 2019. J.D. told VIPD that during each incident, the man asked J.D.'s neighbor—also a minor male and a witness in this matter, T.N.—to go get J.D. and bring him to a dark room inside an unfinished apartment in J.D.'s neighborhood. J.D. told VIPD that on each occasion Head Honcho would pull out a knife and make J.D. perform fellatio and submit to anal penetration. After each of the five incidents, J.D. said the man would threaten to kill J.D. as well as the other neighborhood boys if J.D. ever told anyone what had happened. J.D. told VIPD he would be able to recognize the man if he saw a picture of the man, saw him in person, or even if he heard the man's voice.[3]

In the second case pending against Rivera, VIPD interviewed K.C., a skinny eight (8)-year-old black Caribbean male. In his videotaped statement, K.C. said a man who identified himself as "Marci" sexually assaulted him a single time while K.C. was attending summer camp on St. Thomas, U.S. Virgin Islands, during the summer of 2019. In his videotaped statement, K.C. stated

---

[3] According to the Affidavit attached to the Information, J.D. was shown a photo array and he identified the photo of Marciano Rivera as his assailant.

that one of his friends at summer camp told him a man wanted to talk to K.C. by the bleachers. K.C. described being asked to perform fellatio, refusing, being told to pull down his pants, and then being penetrated anally. Thereafter, the man told K.C. not to tell anyone what had happened, but K.C. said the man did not make any threats to him.

In the third case pending against Rivera, VIPD interviewed S.S., who was, at the time of the interview, a twenty-one (21)-year-old, heavyset, black Caribbean male. When asked about his education, S.S. told the interviewer he has a third-grade level education. At the time of the interview, S.S. was incarcerated in the Bureau of Corrections ("BOC") on St. Thomas, U.S. Virgin Islands. In the videotaped statement, S.S. described being sexually assaulted every day for several weeks by a man in BOC. S.S. said the man who assaulted him was called "Fat Boy" by the other inmates at BOC, but he did not know the man's real name. S.S. said that every day, the man would come and get him from his cell and take him back to the man's cell in what S.S. described as in the back corner of BOC. S.S. described the sexual assaults, stating that each occasion involved S.S. performing fellatio on the man and then being subject to anal penetration by the man. S.S. said he was afraid for his life and believed the man would hurt or kill him if he did not do what the man asked because S.S. said the man told him not to tell anyone what happened, or he would hurt S.S. Rivera has been identified as the person who perpetrated the sexual assaults upon S.S.

## LEGAL STANDARD

In pertinent part, V.I.R.E. 404(b) states:

> (1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Virgin Islands courts have not interpreted V.I.R.E. 404(b) since its adoption in 2017 nor its recent amendment in June 2022.[4] However, Virgin Islands courts have interpreted Federal Rule of Evidence ("F.R.E.") 404(b), the current version of which is identical to the current version of V.I.R.E. 404(b). Interpreting the federal rule, the Virgin Islands Supreme Court adopted a four-part test established by the United States Supreme Court in *Huddleston v. United States*, to evaluate whether evidence is properly admitted under Rule 404(b). *Saldana v. People of the Virgin Islands*, 73 V.I. 649, 665 (V.I. 2020) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)). The test requires "(1) the evidence must be offered for a proper purpose, (2) the evidence must be relevant under the standards of Rule 402, (3) its probative value must not be substantially outweighed by its potential for unfair prejudice pursuant to Rule 403, and (4) where requested the court must instruct the jury to consider the evidence only for its limited admissible purpose." *Saldana*, 73 V.I. at 665 (citing *Huddleston*, 485 U.S. at 691-92; *Chinnery v. People*, 55 V.I. 508, 526 (V.I. 2011); *United States v. Kellogg*, 510 F.3d 188, 199 n.10 (3d Cir. 2007)).[5]

## ANALYSIS

### A. Identity is relevant to this matter.

The V.I.R.E. 404(b) analysis adopted in *Saldana v. People of the Virgin Islands* states "the evidence must be relevant under the standards of Rule 402". *Saldana*, 73 V.I. at 665 (citing

---

[4] The Court notes that V.I.R.E. 404(b) was recently amended, effective June 1, 2022. *See In re: Amendments to the Rules*, Prom. No. 2022-001 (V.I. March 16, 2022). The amendments to the local rule are intended to mirror the 2020 amendments to the federal rule, making V.I.R.E. 404(b) identical to the current F.R.E. 404(b). The Court finds that the recent changes to the rule do not materially alter the substance of the rule. Indeed, the Notes of Advisory Committee on the 2020 amendments to the federal rule state the main purpose for the amendment is to "impose additional notice requirements on the prosecution in a criminal case . . . [and make] clarifications to the text and headings". (citing FED. R. EVID. 404 advisory committee's note). The Court relies upon the current version of the rule for resolution of the instant motion, given the motion was filed on July 20, 2022, after the recent amendment went into effect.

[5] The Third Circuit has continued to utilize this four-part test under the recently amended version of F.R.E. 404(b). *See, e.g.*, *United States v. Scarfo*, 41 F.4th 136, 180 (3d Cir. 2022).

*Huddleston*, 485 U.S. at 691-92; *Chinnery*, 55 V.I. at 526; *Kellogg*, 510 F.3d at 199 n.10). In pertinent part, V.I.R.E. 402 states "irrelevant evidence is not admissible". V.I. R. EVID. 402. Given that identity of an assailant is a required element of any crime charged, the Court finds the evidence purporting to prove identity is relevant to an element of the People's burden. Therefore, the People's motion satisfies the relevancy standard.

### B. The evidence is not offered for a "proper purpose" under V.I.R.E. 404(b).

The People argue the proffered evidence should be admitted for the purpose of proving Rivera's identity as J.D.'s assailant in this matter. The People claim that because J.D. did not immediately report the sexual assaults and J.D.'s identification of Rivera as his assailant did not immediately follow the assaults, but rather occurred several weeks later, the additional evidence of identity would be helpful to prove Rivera was the assailant. The People argue there are sufficient similarities among the actions taken by the perpetrator in the assaults against the victims in all three cases as well as the physical appearance and status of the three victims to establish "identity" under V.I.R.E. 404(b). During the hearing, Rivera disagreed, stating there is no issue of identity in the instant matter, and that there is already evidence available for the People to prove his identity given that J.D. identified Rivera from a photo array, and J.D. will likely testify regarding Rivera's identity at trial. Further, Rivera argues the similarities the People attempt to use to prove "identity" do not satisfy the pertinent standard for establishing a "signature crime" or modus operandi pursuant to V.I.R.E. 404(b).

The Virgin Islands Supreme Court has said evidence is offered for a "proper purpose" when it is "probative of a material issue other than character." *Tyson v. People of the Virgin Islands*, 59 V.I. 391, 423 (V.I. 2013) (quoting *United States v. Cross*, 308 F.3d 308, 320-21 (3d Cir. 2002)).

Many cases have held, when interpreting F.R.E. 404(b)(2), that "identity" is a proper purpose outside of propensity or character. *See, e.g.*, *Tyson*, 59 V.I. at 423.; *Davis v. People of the Virgin Islands*, 74 V.I. 475, 485 (V.I. 2021); *People of the Virgin Islands v. Fenton*, 59 V.I. 163, 172 (V.I. Super. Ct. 2013). In defining "identity", the Third Circuit has stated that a "jury can rationally infer from evidence that the defendant committed a prior crime in an unusual and distinctive manner and evidence that a second similar crime was committed in the same unusual and distinctive manner that the defendant committed the second crime". *Gov't of Virgin Islands v. Pinney*, 967 F.2d 912, 916 (3d Cir. 1992).

The Third Circuit was presented with a similar series of sexual assaults and held that the following similarities among the assaults do not reach a level of identification or uniqueness required to "warrant the inference [the defendant] was the perpetrator in each incident": "each involved a minor of about the same age; each allegedly occurred in the defendant's apartment; each involved sexual intercourse; and each time, the defendant allegedly warned the victim not to tell anyone". *Pinney*, 967 F.2d at 916-17 (citing *McCormick on Evidence* § 190, at 559 (3rd ed. 1984) ("Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated murders, robberies, or rapes. The pattern and characteristics must be so unusual and distinctive as to be like a signature."). Similarly, the People in the instant matter argue that the similarities in the instant case are as follows: the Defendant lured his alleged male victims to isolated locations[6], threatened them not to tell anyone, and made them perform fellatio on him and/or sodomized them. The People argue that in all three cases, the Defendant chose victims who

---

[6] Although the People claim there is a commonality of the sexual assault taking place in isolated areas, cases, the Court finds that the jail cell in the BOC can hardly be described as an "isolated location". While no one may have observed the assaults in the jail cell, lack of witnesses does not define a location as isolated.

have similar body shapes and hair styles and that each of the victims was intellectually inferior to

the Defendant, given that J.D. and K.C. were minors at the time of the assault and S.S. suffers from

mental health issues which make him "more childlike and vulnerable than most adults". The

People argue these qualities made the victims easier to isolate and manipulate.

The Court is not persuaded that the common actions described by the People are indicative

that the same person committed the alleged assaults upon the three victims; the activities

mentioned—luring, threatening, sodomizing, and forcing victims not to disclose the interactions—

are not a sufficiently distinctive and unique set of circumstances for the Court to admit the evidence

for the purpose of proving identity. Additionally, upon reviewing the proffered evidence, the Court

does not agree that all actions that allegedly occurred in one case also occurred in the other two

cases. For instance, according to J.D., the perpetrator lured him to a remote location with the help

of another minor male; held a knife to J.D.'s neck to force him to subject himself to the assault;

forced J.D. to perform fellatio and sodomized him; and threatened J.D. with violence if he told

anyone what had happened. However, victim K.C. stated that the perpetrator never threatened him,

although K.C. states he was lured to what can be described as an isolated location (by the

bleachers), sodomized, and told not to tell anyone. Further, S.S. said his assailant came and got

S.S. himself, rather than having someone else lure S.S. to the BOC cell where the assault allegedly

occurred. Therefore, the Court finds no distinctive commonalities or modus operandi among the

methods used during each assault that rises to the level contemplated by VIRE 404(b).

Additionally, the Court finds that two of the alleged victims—J.D. and S.S.—have the

similar physical characteristics of being heavyset, but the third victim, K.C., is significantly

thinner, younger and smaller than the other two victims. On the other hand, the Court agrees that

J.D. and K.C. were minors, and S.S.'s cognitive disabilities may make him more vulnerable to manipulation than an average twenty-one (21)-year-old.[7] However, J.D. was well-spoken, poised, and appeared seemingly intelligent for a thirteen (13)-year-old. Additionally, the Court received no information regarding Rivera's intellectual ability, and accordingly cannot rightly compare the victims' intellects to Rivera's. Thus, there is insufficient evidence to show the supposed intellectual inferiority described by the People. Therefore, although each of the victims are African American or Caribbean males with dark skin and black hair, who could theoretically be viewed as "intellectually inferior" to Rivera, the Court finds that these basic similarities are not indicative of a distinctive or unusual pattern sufficient to prove identity under V.I.R. E. 404(b)(2).

The Court finds the purported commonalities described by the People are not accurate. But even if they were, the alleged pattern of assaults upon the three victims and the basic descriptions of the victims are insufficient to prove the defendant operated in such a "unusual or distinctive" manner so as to establish a signature crime. Further, even if all three victims were heavyset black Caribbean males such a factor would not be sufficient to establish identity under 404(b)(2). Therefore, the Court finds the referenced commonalities were not probative of identity under the established standard and accordingly do not qualify identity as a "proper purpose" for introducing the evidence.

### C. The probative value of the evidence is substantially outweighed by its potential for unfair prejudice to the Defendant.

To be admitted under V.I.R.E. 404(b)(2), "the evidence . . . must not be substantially more prejudicial than probative under Rule 403". *Davis*, 74 V.I. at 485 (citing *Chinnery*, 55 V.I. at 526).

---

[7] Defendant Marciano Rivera was 18 years old at the time of the alleged assaults in all three cases.

Rule 403 states "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice; confusing the issues; misleading the jury; undue delay; wasting time; or needlessly presenting cumulative evidence." V.I. R. EVID. 403. A prejudicial effect is not "unfair" simply because the evidence cuts against one party, but rather, it must have an "undue tendency to suggest decision on an improper basis . . ." *Tyson*, 59 V.I. at 423 (citing FED. R. EVID. 403 advisory committee's note). "Unfair prejudice is measured by the degree to which a jury responds negatively to some aspect of the evidence unrelated to its tendency to make a fact in issue more or less probable." *Tyson*, 59 V.I. at 423. (quoting *Krepps v. Gov't of the V.I.*, 47 V.I. 662, 674 (D.V.I. App. Div. 2006)). In the context of Rule 404(b), "the concern is whether the value of using the evidence for one of the permissible purposes is substantially outweighed by the possibility the jury will use the evidence as proof of bad character". *Tyson*, 59 V.I. at 423 (citing FED. R. EVID. 404 advisory committee's note).

The People argue that the details of the cases pending against Rivera offer essential evidence of identity because J.D. only knew the perpetrator by his nickname, "Head Honcho". However, Rivera counters that identity is not at issue here and argues that any probative value of the proffered identity evidence is substantially outweighed by a danger of unfair prejudice to Rivera because a jury could conclude Rivera is more likely to have committed the crimes in this case based on allegations that he perpetrated other crimes. Rivera argues that admission of this evidence would mislead the jury, confuse the issues, and serve to unfairly prejudice the Defendant.

The Court agrees that the probative value of the evidence would be substantially outweighed by a danger of unfair prejudice to Rivera if the Court were to admit evidence of the other crimes Rivera allegedly committed against two additional victims. *See* V.I. R. EVID. 403.

Even though identity is relevant to the instant matter and the People must prove identity at trial, the Court's finding that the proffered evidence is not offered for a "proper purpose" under 404(b)(2) negates the probative value of the evidence. The Court finds that without a "proper purpose" for introducing the evidence, there is a very real danger that inclusion of the other sexual assault allegations against Rivera could "appeal[] to the jury's sympathies, arouse[] a sense of horror, provoke[] its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case", which would make their admission unfairly prejudicial under Rule 403. *Celestine v. People of the Virgin Islands*, 73 V.I. 500, 507 (V.I. 2020) (quoting *Carty v. People*, 56 V.I. 345, 358 (V.I. 2012)). The Court finds there is little to no probative value in the proffered evidence for its intended purpose of proving identity, and there are additional means by which the People can prove Rivera's identity (e.g., through J.D.'s testimony and J.D.'s prior identification of Rivera). Even if J.D. could not identify the perpetrator, there is significant danger for unfair prejudice to the Defendant were the evidence introduced. The Court further finds that even if it provided a limiting instruction to the jury with respect to the purpose of the proffered evidence, its probative value remains insignificant compared to the danger of unfair prejudice that Rivera could suffer.

Accordingly, the Court finds the People have failed to show that the probative value of the evidence offered overcomes the substantial likelihood of unfair prejudice, and the Court will not admit the evidence.

## CONCLUSION

The Court finds that identity is relevant to the instant matter, but the proffered evidence is not probative of identity. Although there are some vague similarities between the victims and tactics used in the three cases, the Court finds the similarities do not prove identity under the standards set forth within V.I.R.E. 404(b) and its supporting case law. In addition, the probative value of the proffered evidence is substantially outweighed by a danger of unfair prejudice to the Rivera if the evidence of the other sexual assaults Rivera allegedly committed were admitted during the trial of this matter. Accordingly, the Court will deny the People's motion and the evidence will not be admitted.

An order consistent herewith will immediately follow.

DATED: September 6, 2022

_____
**Kathleen Mackay**
Judge of the Superior Court
of the Virgin Islands

ATTEST:
**TAMARA CHARLES**
Clerk of the Court

BY: _____
for **LATOYA CAMACHO**
Court Clerk Supervisor 09/06/22